# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

| | |
|---|---|
| BONNIE WILMOT, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>- against -<br><br>RICOLA USA INC.,<br><br>Defendant | 6:23-cv-01709-WWB-RMN<br><br><br>First Amended<br>Class Action Complaint<br><br>Jury Trial Demanded |

Plaintiff Bonnie Wilmot ("Plaintiff") alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

1.   In the context of selecting over-the-counter ("OTC") medications, "the greatest choice often starts where the evidence finishes – namely between drugs of the same class."[1]

2.   This category is prone to comparative advertising because little differentiation often exists between items.

3.   Relative to noncomparative ads, comparative ads were shown to result in greater purchase intentions.[2]

4.   When such claims are truthful and complete, this information can be

---

[1] Brown MJ. A rational basis for selection among drugs of the same class. Heart. 2003 Jun;89(6):687-94.
[2] Ang & Leong, 1994; Demirdjian, 1983; Grewal et al., 1997; Miniard, Barone, Rose, & Manning, 1994.

useful to consumers seeking to make optimal purchasing decisions between a large variety of seemingly similar products.



5.    A subtype of comparative advertising is a claim of implied superiority, where a product attribute is featured independently and/or highlighted in light of competitor products.

6.    One way an OTC product can distinguish itself is by highlighting its potency, the physical mass of drug at which half maximal response occurs.

7.    However, because the public is prone to conflate potency with efficacy, defined as the maximum response to a drug, such claims must be made carefully.

8.    Recognizing the potential for consumers to be misled by this kind of OTC labeling, the Federal Food, Drug and Cosmetic Act ("FFDCA") set limits on what such products could tell the public. 21 U.S.C. § 301 *et seq.*; 21 C.F.R. Parts

200 and 300.

9.     This State adopted these laws in their entirety through the Florida Drug and Cosmetic Act ("DCA"). Fla. Stat. § 499.001 *et seq*.; Fla. Stat. § 499.002(b) ("Provide uniform legislation to be administered so far as practicable in conformity with the provisions of, and regulations issued under the authority of, the [FFDCA] and that portion of the Federal Trade Commission Act which expressly prohibits the false advertisement of drugs, devices, and cosmetics.").

10.     The Florida Administrative Code "adopts and incorporates by reference the labeling requirements for prescription drugs and over-the-counter drugs as set forth in the federal act at 21 U.S.C. [] 301 *et seq*. and in Title 21 [C.F.R.]." Fla. Admin. Code R. 61N-1.006(1).

11.     Federal and state law require that OTC products be "labeled in compliance with [21 U.S.C. §§ 351 – 360n-1] and subchapter C [including 21 C.F.R. Parts 200 and 201]." 21 C.F.R. § 330.1(c)(1)

12.     Seeking to benefit from its own attributes and comparisons to competitors, Ricola USA Inc. ("Defendant") manufactures and sells oral anesthetic lozenges described as "Max Strength[*]" under its Ricola$^{MAX}$ brand, promoted as "Extra Strength Menthol" ("Product").



13.   Prospective purchasers will believe that Ricola$^{MAX}$ Max Strength lozenges will deliver the highest quantity of menthol possible, subject to any legal limits on this substance.

14.   Moreover, consumers will expect that Ricola$^{MAX}$ Max Strength lozenges contain more menthol relative to their weight than other lozenges.[3]

15.   The maximum amount of menthol permitted by the Food and Drug Administration ("FDA") in an OTC lozenge is 20 mg. § M022.52(d)(6)(ii).

16.   The Product's labeling as "Max Strength*" under its Ricola$MAX$ brand

---

[3] Harris, 1981; Harris, Dubitsky, and Bruno, 1983.

results in it being "misbranded" because "Max Strength" is false, since the maximum amount of menthol allowed per lozenge is 20 mg. 21 U.S.C. § 352(a); Fla. Stat. § 499.007(1)§ M022.52(d)(6)(ii).

17.   The Product's labeling as "Max Strength*" under its Ricola*MAX* brand results in it being "misbranded" because "Max Strength" is misleading, since only the fine print at the bottom of the back label tells consumers "Max Strength" does not mean the maximum amount of menthol allowed by law in an OTC lozenge, but only that it refers to "*Ricola's strongest throat drop." 21 U.S.C. § 352(a); Fla. Stat. § 499.007(1); § M022.52(d)(6)(ii).



18.   This is confirmed by the small print of the back label's Drug Facts, revealing that the menthol "Active ingredient (in each drop)" is "15.3 mg," one-third less than the maximum amount of menthol allowed per lozenge by law.



19.   Even if purchasers notice the small asterisk next to "Max Strength" on the front label, it does not point them to where on the packaging they should seek clarification.

20.   The Product's labeling as "Max Strength*" under its Ricola*MAX* brand results in it being "misbranded" because "Max Strength" is false and misleading because other brands, like Vicks' VapoCOOL Severe sell menthol lozenges advertised as "Max Strength," but contain the maximum amount of menthol, 20 mg, allowed by law. 21 U.S.C. § 352(a); Fla. Stat. § 499.007(1).

 

21.   That the competitor VapoCOOL lozenges contain menthol as their "Active ingredient (per drop)" at "20 mg" is confirmed by its similar Drug Facts on its back label, which indicates they are each used for the same purpose, as an "Oral anesthetic."



22.   The Product's labeling as "Max Strength*" under its Ricola*MAX* brand results in it being "misbranded" notwithstanding the falsity of the "Max Strength" claims, because there is no difference in efficacy between 15.3 mg and 10 mg menthol per drop.

23.   No credible or accepted controlled scientific studies or reports indicate 15.3 mg of menthol provides a greater therapeutic benefit than lozenges containing 10 mg of menthol.

24.   When the FDA evaluated dosages for menthol lozenges, it only relied on studies of lozenges containing 9 mg menthol, not 20 mg, the maximum amount allowed.

25.   The decision to allow lozenges to contain 20 mg menthol was based exclusively on the FDA's determination that it would take one hundred times this amount, 2,000 mg or 2 grams, to result in lethality.

26.   In this context, it allowed lozenges to contain 20 mg menthol, not based on any greater efficacy, but on the unlikelihood that one could consume a fatal quantity of it.

27.   As a result of the false and misleading representations, the Product is sold at a premium price, approximately $5.79 per 34 lozenges, excluding tax and sales, higher than similar products, represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

## JURISDICTION

28.   Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

29.   The aggregate amount in controversy exceeds $5 million, including any

statutory or punitive damages, exclusive of interest and costs.

30.   Plaintiff is a citizen of Florida.

31.   Defendant is a citizen of New Jersey because it is a corporation formed under the laws of New Jersey with a principal place of business in New Jersey.

32.   The class of persons Plaintiff seeks to represent includes persons who are citizens of a different state from which Defendant is a citizen.

33.   The members of the proposed class Plaintiff seeks to represent are more than one hundred, because the Product has been sold at thousands of retail stores, including grocery stores, convenience stores, warehouse club stores, big box stores, gas stations, pharmacies and online, throughout this State.

34.   The Court has jurisdiction over Defendant because it transacts business within Florida and sells the Product to consumers within Florida through thousands of retail stores.

## VENUE

35.   Venue is in this District because a substantial part of the events or omissions giving rise to these claims occurred in Brevard County, which is where Plaintiff's causes of action accrued.

36.   Plaintiff purchased, used and/or consumed the Product in reliance on the labeling identified here in Brevard County.

37.   Plaintiff first became aware the labeling was false and misleading in

Brevard County.

38.   Plaintiff resides in Brevard County.

## PARTIES

39.   Plaintiff Bonnie Wilmot is a citizen of Brevard County, Florida.

40.   Defendant Ricola USA, Inc. is a New Jersey corporation with a principal place of business in New Jersey.

41.   Defendant is a leading manufacturer and seller of OTC lozenges.

42.   The Ricola brand is one of the world's most recognizable and trusted, because its lozenges are based on time-tested formulations, crafted originally in chalets in the shadows of the Swiss Alps.

43.   Defendant sells the Product to third parties such as grocery stores, big box stores, warehouse club stores, drug stores, convenience stores, bodegas, and/or online, where purchasers buy it.

44.   Plaintiff purchased the Product between January 2021 and the date the Complaint was filed, at grocery stores, big box stores, warehouse club stores, drug stores, convenience stores, bodegas, and/or online, in this State.

45.   Plaintiff is like most consumers and looks to the large print and images on the front of a product to learn what it is, its contents, and its abilities, relative to itself and other similar products she may buy.

46.   Plaintiff read and relied on the statements of "Max Strength*" and

Ricola$^{MAX}$ to believe she was buying lozenges (1) with the maximum amount of the identified active ingredient, menthol, permitted by law, (2) with more of the active ingredient, menthol, per milligram or other unit than other similar products, and/or (3) that, because of its supposed greater strength or potency, i.e., "max strength," it would have greater efficacy.

47.   Plaintiff believed the purported greater amount and/or concentration of menthol would provide a proven therapeutic benefit which was not available from similar lozenges not represented as "max strength."

48.   Plaintiff bought the Product at or exceeding the above-referenced price.

49.   Plaintiff paid more for the Product than she would have had she known it (1) did not contain the maximum amount of the identified active ingredient permitted by law, since it had 15.3 mg menthol compared to 20 mg menthol allowed, (2) did not contain more of the active ingredient per milligram or other unit than other similar products, because other products labeled as "Max Strength" had the maximum amount of menthol allowed by law, 20 mg, and/or (3) it was not more effective than similar lozenges which contained a smaller quantity of menthol, because no credible or accepted controlled scientific studies or reports indicate 15.3 mg of menthol provides a greater therapeutic benefit than lozenges containing 10 mg of menthol, as she would not have bought it or would have paid less.

50.   The Product was worth less than what Plaintiff paid, and she would not

have paid as much absent Defendant's false and misleading statements and omissions.

## CLASS ALLEGATIONS

51.   Plaintiff seeks to represent the following class:

> All persons in Florida who purchased the Product in Florida during the statutes of limitations for each cause of action alleged.

52.   Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

53.   Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

54.   Plaintiff is an adequate representative because her interests do not conflict with other members.

55.   No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

56.   Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

57.   Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

## CAUSES OF ACTION

### COUNT I
Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"),
Fla. Stat. § 501.201, *et seq.*

58.   Plaintiff incorporates by reference paragraphs 1-27.

59.   The purpose of FDUTPA is "To protect the consuming public…from those who engage in…deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

60.   This includes "making state consumer protection and enforcement consistent with established policies of federal law relating to consumer protection." Fla. Stat. § 501.202(3).

61.   FDUTPA considers any "unfair or deceptive acts or practices in the conduct of any trade or commerce [to be] unlawful." Fla. Stat. § 501.204(1).

62.   Such "unfair or deceptive acts or practices" must be construed so that "due consideration and great weight shall be given to the interpretations of the FTC and the federal courts relating to [the FTC Act,] 15 U.S.C. § 45(a)(1)." Fla. Stat. § 501.204(2).

63.   Violations of FDUTPA can be based on other laws and standards related to consumer deception. Fla. Stat. § 501.203(3).

64.   An FDUTPA violation occurs whenever "Any rules promulgated pursuant to the FTC Act, 15 U.S.C. § 41 *et seq.*" are violated. Fla. Stat. §

501.203(3)(a).

65.   An FDUTPA violation occurs whenever "The standards of unfairness and deception set forth and interpreted by the Federal Trade Commission ('FTC') or the federal courts" relating to the FTC Act are violated. Fla. Stat. § 501.203(3)(b).

66.   An FDUTPA violation occurs whenever "Any law, statute, rule, regulation, or ordinance which proscribes…unfair, deceptive, or unconscionable acts or practices" is violated. Fla. Stat. § 501.203(3)(c).

67.   In considering whether advertising is misleading in a material respect, the FTC Act recognizes that the effect of advertising includes not just representations made or suggested by words and images, "but also the extent to which [it] fails to reveal facts material in the light of such representations." 15 U.S.C. § 55(a)(1).

68.   The Product's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

69.   This is because consumers buying an OTC product identified as "Max Strength" and Ricola$^{MAX}$ will expect what they are buying (1) contains the maximum amount of the identified active ingredient, menthol, permitted by law, (2) contains more of the active ingredient, menthol, per milligram or other unit than other similar products, and/or (3) that, because of its supposed greater strength or potency, i.e., "max strength," it would have greater efficacy.

70.   The labeling of the Product violated the FTC Act and thereby violated

FDUTPA because the representations and omissions of "Max Strength" and Ricola$^{MAX}$ tells purchasers they are buying lozenges (1) with the maximum amount of the identified active ingredient, menthol, permitted by law, (2) with more of the active ingredient, menthol, per milligram or other unit than other similar products, and/or (3) that, because of its supposed greater strength or potency, i.e., "max strength," it would have greater efficacy, when this was false, because it (a) did not contain the maximum amount of the identified active ingredient permitted by law, since it had 15.3 mg menthol compared to 20 mg menthol allowed, (b) did not contain more of the active ingredient per milligram or other unit than other similar products, because other products labeled as "Max Strength" had the maximum amount of menthol allowed by law, 20 mg, and (c) it was not more effective than similar lozenges which contained a smaller quantity of menthol, because no credible or accepted controlled scientific studies or reports indicate 15.3 mg of menthol provides a greater therapeutic benefit than lozenges containing 10 mg of menthol. Fla. Stat. § 501.203(3)(a).

71.   The labeling of the Product violates laws, statutes, rules and regulations "which proscribe[]…unfair, deceptive, or unconscionable acts or practices," thereby violating FDUTPA. Fla. Stat. § 501.203(3)(c).

72.   The labeling of the Product violated FDUTPA because the representations and omissions of "Max Strength" and Ricola$^{MAX}$ tells purchasers

they are buying lozenges (1) with the maximum amount of the identified active ingredient, menthol, permitted by law, (2) with more of the active ingredient, menthol, per milligram or other unit than other similar products, and/or (3) that, because of its supposed greater strength or potency, i.e., "max strength," it would have greater efficacy, when this was false, because it (a) did not contain the maximum amount of the identified active ingredient permitted by law, since it had 15.3 mg menthol compared to 20 mg menthol allowed, (b) did not contain more of the active ingredient per milligram or other unit than other similar products, because other products labeled as "Max Strength" had the maximum amount of menthol allowed by law, 20 mg, and (c) it was not more effective than similar lozenges which contained a smaller quantity of menthol, because no credible or accepted controlled scientific studies or reports indicate 15.3 mg of menthol provides a greater therapeutic benefit than lozenges containing 10 mg of menthol, which was unfair and deceptive to consumers. Fla. Stat. § 501.204(1).

73.  The labeling of the Product violated FDUTPA because the representations and omissions of "Max Strength" and Ricola$^{MAX}$ tells purchasers they are buying lozenges (1) with the maximum amount of the identified active ingredient, menthol, permitted by law, (2) with more of the active ingredient, menthol, per milligram or other unit than other similar products, and/or (3) that, because of its supposed greater strength or potency, i.e., "max strength," it would

have greater efficacy, when this was false, because (a) the Product did not contain the maximum amount of the identified active ingredient permitted by law, since it had 15.3 mg menthol compared to 20 mg menthol allowed, (b) the Product did not contain more of the active ingredient per milligram or other unit than other similar lozenges, because other products labeled as "Max Strength" had the maximum amount of menthol allowed by law, 20 mg, and (c) the Product was not more effective than similar lozenges which contained a smaller quantity of menthol, because no credible or accepted controlled scientific studies or reports indicate 15.3 mg of menthol provides a greater therapeutic benefit than lozenges containing 10 mg of menthol, which was contrary to the Drug and Cosmetic Act, which adopted the FFDCA and accompanying regulations.

74.    The FFDCA and DCA prohibit consumer deception by companies in the labeling of OTC products. Fla. Stat. § 501.203(3)(c).

75.    These include, but are not limited to, the following federal and state laws and regulations described above.

|      Federal      |      State      |
|-------------------|-----------------|
| 21 U.S.C. § 352(a) | Fla. Stat. § 499.007(1) |
| 21 C.F.R. § 330.1(c)(1) | Fla. Admin. Code R. 61N-1.006(1) |

76.    Plaintiff believed the Product contained (1) the maximum amount of the identified active ingredient, menthol, permitted by law, (2) more of the active ingredient, menthol, per milligram or other unit than other similar lozenges, and/or

17

(3) that, because of its supposed greater strength or potency, i.e., "max strength," the Product would have greater efficacy, when this was false and misleading.

77.   Plaintiff seeks to recover for economic injury and/or loss she sustained based on the misleading labeling and packaging of the Product, a deceptive practice under FDUTPA, by paying more for it than she otherwise would have.

78.   Plaintiff will produce evidence showing how she and consumers paid more than they otherwise would have paid for the Product, relying on Defendant's representations and omissions, using statistical and economic analyses, hedonic regression, hedonic pricing, conjoint analysis and other advanced methodologies.

79.   As a result of Defendant's misrepresentations and omissions, Plaintiff suffered damages in the amount she paid for the Product and/or the price premium paid for the Product, which is the difference between what she paid for it and how much it would have been sold for without the false and misleading representations and omissions identified here.

## COUNT II
### False and Misleading Adverting,
### Fla. Stat. § 817.41

80.   Plaintiff incorporates by reference paragraphs 1-27.

81.   Defendant made misrepresentations and omissions of material fact, by identifying the Product as "Max Strength" under its Ricola$^{MAX}$ brand because the representations and omissions of "Max Strength" and Ricola$^{MAX}$ tells purchasers

they are buying lozenges (1) with the maximum amount of the identified active ingredient, menthol, permitted by law, (2) with more of the active ingredient, menthol, per milligram or other unit than other similar products, and/or (3) that, because of its supposed greater strength or potency, i.e., "max strength," it would have greater efficacy, when this was false, because (a) the Product did not contain the maximum amount of the identified active ingredient permitted by law, since it had 15.3 mg menthol compared to 20 mg menthol allowed, (b) the Product did not contain more of the active ingredient per milligram or other unit than other similar products, because other products labeled as "Max Strength" had the maximum amount of menthol allowed by law, 20 mg, and (c) the Product was not more effective than similar lozenges which contained a smaller quantity of menthol, because no credible or accepted controlled scientific studies or reports indicate 15.3 mg of menthol provides a greater therapeutic benefit than lozenges containing 10 mg of menthol, through its advertisements and marketing in various forms of media, product packaging and descriptions, and/or targeted digital advertising.

82.   Defendant failed to truthfully disclose that (1) the Product did not contain the maximum amount of the identified active ingredient permitted by law, since it had 15.3 mg menthol compared to 20 mg menthol allowed, (2) the Product did not contain more of the active ingredient per milligram or other unit than other similar lozenges, because other products labeled as "Max Strength" had the maximum

amount of menthol allowed by law, 20 mg, and (3) the Product was not more effective than similar lozenges which contained a smaller quantity of menthol, because no credible or accepted controlled scientific studies or reports indicate 15.3 mg of menthol provides a greater therapeutic benefit than lozenges containing 10 mg of menthol.

83.   Defendant falsely and/or deceptively stated and/or implied (1) the Product had the maximum amount of the identified active ingredient, menthol, permitted by law, (2) the Product had more of the active ingredient, menthol, per milligram or other unit than other similar lozenges, and/or (3) that, because of its supposed greater strength or potency, i.e., "max strength," the Product would have greater efficacy, when this was false, because (a) the Product did not contain the maximum amount of the identified active ingredient permitted by law, since it had 15.3 mg menthol compared to 20 mg menthol allowed, (b) the Product did not contain more of the active ingredient per milligram or other unit than other similar products, because other lozenges labeled as "Max Strength" had the maximum amount of menthol allowed by law, 20 mg, and (c) the Product was not more effective than similar lozenges which contained a smaller quantity of menthol, because no credible or accepted controlled scientific studies or reports indicate 15.3 mg of menthol provides a greater therapeutic benefit than lozenges containing 10 mg of menthol.

84.  Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions, since (1) "max strength" is a statement of fact which purports to distinguish the Product from similar lozenges which are not "max strength" with respect to the amount of active ingredient per unit, (2) implied superiority claims, even where no other brands are identified, are significant factors in causing consumers to choose one product over another amongst numerous seemingly similar products, and (3) consumers seeking relief from an ailment of the type for which they would purchase OTC products will believe "max strength" implies greater efficacy than comparable products not identified as "max strength."

85.  Defendant knew its statements and omissions were false and/or misleading.

86.  Defendant intended for consumers to rely on its false statements and omissions for the purpose of selling the Product.

87.  Plaintiff and class members did in fact rely upon these statements and omissions.

88.  Reliance was reasonable and justified because of the public trust placed in lozenges sold under the Ricola brand, who expect them to be labeled accurately and in a non-misleading manner.

89.  Plaintiff paid more for the Product, as she would not have paid as much

or bought it if she knew that (1) it did not contain the maximum amount of the identified active ingredient permitted by law, since it had 15.3 mg menthol compared to 20 mg menthol allowed, (2) it did not contain more of the active ingredient per milligram or other unit than other similar products, because other products labeled as "Max Strength" had the maximum amount of menthol allowed by law, 20 mg, and/or (3) it was not more effective than similar lozenges which contained a smaller quantity of menthol, because no credible or accepted controlled scientific studies or reports indicate 15.3 mg of menthol provides a greater therapeutic benefit than lozenges containing 10 mg of menthol.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2. Awarding monetary damages and interest;

3. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

4. Other and further relief as the Court deems just and proper.

Dated:  February 14, 2024

Respectfully submitted,

/s/ William Wright
_____

The Wright Law Office P.A.
515 N Flagler Dr Ste P300
West Palm Beach FL 33401
(561) 514-0904
willwright@wrightlawoffice.com

*Lead Counsel for Plaintiff*

*Notice of Lead Counsel Designation:*

*Lead Counsel for Plaintiff*

William Wright

The Wright Law Office P.A.